IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN MIMS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1078-N |
| | § | |
| STEWART TITLE GUARANTY | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Stewart Title Guaranty Company's ("Stewart") motion to dismiss [6] Plaintiffs John Mims, Lucy Mims, and Helen Cotton Ragland's complaint for failure to state a claim. For the reasons explained below, the Court denies Stewart's motion.[1]

### I. ALLEGATIONS OF ILLEGAL OVERCHARGES AND FEE SPLITTING

In Texas, lenders of mortgage loans require borrowers to purchase title insurance as a condition of making a residential mortgage loan. *See* Plaintiffs' Second Amended Complaint at ¶ 6. It insures the lender against certain defects in title to the property, and it remains in effect until the loan is repaid. *Id.* Lenders also require borrowers to purchase title insurance policies when the homeowners refinance their homes, and these policies are sometimes referred to as "reissue policies." *Id.* at ¶ 7.

---

[1]The Court denies Plaintiffs' motion for leave to file a surreply brief. [26]

ORDER – PAGE 1

The Texas Department of Insurance ("TDI") fixes the premium rates to be charged by title insurance companies. Id at ¶ 8. The required rates for a original issue title insurance policy are called the "Basic Rates." Id. at ¶ 9. TDI has also adopted mandatory rates for reissue lender title policies, and these rates are calculated by using the Basic Rate less the "reissue discount." Id. at ¶ 10. The reissue discount rate ranges from 40% to 15%, with the rate decreasing as time elapses from the date of the mortgagee policy insuring the old mortgage. Id. at ¶ 11. The discount rate is 40% for policies reissued within two years from the date of the mortgagee policy insuring the old mortgage.

Plaintiffs allege that although they were refinancing their prior mortgages and procuring a reissue policy within two years from the date of the mortgagee policy insuring the old mortgage, Stewart failed to give Plaintiffs the mandatory 40% discount. Id. at ¶¶ 15, 18. Plaintiffs also allege that Stewart split the resulting illegal profits with Stewart's title agents. Plaintiffs argue that Stewart's actions violated section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), as codified at 12 U.S.C. § 2607(b), and support claims for unjust enrichment and money had and received. Stewart moves to dismiss the complaint for failure to state a claim.

## II. RULE 12(B)(6) STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1974 (2007).[2] A plaintiff is required, however, to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. THE REISSUE DISCOUNT IS MANDATORY

Plaintiffs have sufficiently alleged that they were entitled to receive a reissue discount. Stewart argues that Plaintiffs have not alleged that they were eligible for discounts because they failed to allege that they or anyone else informed Stewarts' title issuing agent that their old mortgages were insured, or that the title issuing agent otherwise knew the old mortgages were insured. Stewart's argument fails for at least two reasons. First, Stewart has offered no support for its claim that the mandatory rates are dependent upon it having had knowledge that Plaintiffs were eligible for the discounts, and Stewart has made no argument that the knowledge imparted to it by this lawsuit does not create a duty to rectify its previous oversight (by now reimbursing Plaintiffs). Second, even if Plaintiffs' eligibility for the

---

[2]"Although the context of this discussion in *Bell Atlantic* was the Sherman Act, nothing in the reasoning of the decision would appear to limit its scope to Sherman Act Claims." *Halaris v. Viacom Inc.*, No. 3:06-CV-1646-N, at 9 (N.D. Tex. Sept. 21, 2007).

mandatory discount depended on Stewart knowing that the Plaintiffs' old mortgages were insured, the  Plaintiffs have explained in their briefing that, given a basic understanding of the title insurance industry, Stewart and its title agent would have known that Plaintiffs' old mortgages were insured.

### IV.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED VIOLATIONS OF RESPA

Plaintiffs' allegation that Stewart charged illegally excessive insurance premiums, coupled with their allegation that Stewart split the charges with the its title agents, is sufficient to state a claim for violations of RESPA section 8(b).  That section provides:

> Splitting Charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).  Although Plaintiffs' allegations are vague, they can be fairly read to support the following argument: Stewart charged excessive premiums.  Stewart gave, and title agents accepted, a portion of the excessive premiums.  The portion accepted by the title agents were excessive and not "for services actually performed," but instead were in the nature of kickbacks or referral fees.[3]  Construed in this manner, Plaintiffs' allegations sufficiently state a violation of section 8(b).  *See Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002) (noting that section 8(b) "would clearly apply to situations where a mortgage lender overcharges a consumer and splits the overcharge with a mortgage

---

[3]The purpose of RESPA section 8 was "to prohibit all kickback and referral fee arrangements whereby any payment is made or thing of value furnished for the referral of real estate settlement business." *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 268 (4th Cir. 2002).

service provider"); *Patino v. Lawyers Title Ins. Corp.*, No. 3:06-CV-1479-B, slip op. at 6 (N.D. Tex. Jan. 11, 2007) (Boyle, J.) (finding that plaintiffs stated a claim under RESPA 8(b) when they alleged excessive charges and fee splitting).

Nonetheless, Plaintiffs ask for too much when they suggest that Stewart automatically violated section 8(b) simply because Stewart split part of the excess premiums for which it had not actually provided services. The ultimate issue is not whether Stewart actually provided services for the excessive premiums, but whether the title agents actually provided services for the split Stewart gave to them. Although the Fifth Circuit has not directly addressed the issue, it is widely acknowledged that section 8(b) is "not a broad price-control provision." *Boulware*, 291 F.3d at 265; *accord Kruse v. Wells Fargo Home Mortage, Inc.*, 383 F.3d 49, 57 (2d Cir. 2004) (noting that "Congress did not intend section 8(b) to serve as a price-control mechanism"); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002) (same). Therefore, Stewart's excessive premiums, standing alone, do not violate section 8(b). *Huag v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) ("[A]n overcharge, standing alone, does not violate Section 8(b) of RESPA."). Merely adding the fact that Stewart paid a portion of the excessive premiums to title agents does not transform the overcharges into violations. Rather, the portion accepted by the title agents must have been other than "for services actually performed," such that the portion would be in the nature of a kickback or referral fee.[4] Although the fact that Stewart did not actually perform services

---

[4]Some courts have agreed, sometimes in response to the insistence of the Department of Urban Housing and Development ("HUD"), that section 8(b) covers some unilateral excessive charges in addition to sharing arrangements. *See, e.g., Santiago v. GMAC*

for the premiums is a strong indication that Stewart's sharing with title agents was other than for services actually performed, this is not necessarily the case. The title agents may have provided a service that warranted Stewart making the payments to them.[5]

Stewart's split with the title agents may have not been for services actually performed, and hence in violation of section 8(b), if the title agents' compensation was *not* reasonable in relation to the services they performed. Section 8(c), clarifying section 8(b), provides that nothing shall be construed as prohibiting:

> the payment of a fee . . . by a title company to its duly appointed agent for *services actually performed* in the issuance of a policy of title insurance [or] the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for *services actually performed* . . . .

12 U.S.C. § 2607(c). With respect to section 8(c), the Fifth Circuit has deferred to HUD's interpretation of "services actually performed," and, specifically, to HUD's "reasonable

---

*Mortgage Group, Inc.*, 417 F.3d 384, 390 (3d Cir. 2005); *Kruse*, 383 F.3d at 53. This has been limited to where excessive charges take the special form of "mark-ups." Mark-ups occur "when the provider outsources the task of providing the service to a third-party vendor, pays the vendor a fee for the service, and then, without providing an additional service, charges the homeowners seeking mortgages a higher fee for the settlement service than that which the provider paid to the third-party vendor." *Kruse*, 383 F.3d at 53.

[5]Plaintiffs may be suggesting that because Stewart gave and title agents accepted a "split," it is also the case the title agents gave and Stewart accepted the "split." Because Stewart did not perform services for the split, the argument goes, the Court need not consider whether the title agents did: Stewart violated 8(b) regardless. The Court is unwilling to give the word "split" such an incredible effect. Generally speaking, someone gives and someone accepts a "portion, split, or percentage." Plaintiffs may be able to tell a story that makes plausible the claim that Stewart accepted a "portion, split, or percentage" from the title agents, but, as it stands, they are far from having done so: the allegations and briefing both support the conclusion that the excessive premiums were Stewart's, and that Stewart gave a portion to title agents.

relationship" test.  *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 741 (5th Cir.

2003).  Under that test, in determining whether payment was for services actually performed,

the Court must consider whether "[the title agents] provided goods or services in connection

with the particular transaction . . . and . . . whether [the title agents'] compensation is

reasonably related to the value of those goods or services."  *Id*.  If, as Plaintiffs appear to

allege, Stewart paid title agents portions of the excess premiums, then it is certainly plausible

that the portions were not reasonably related to the value of the agents' issuing services.

Stewart relies on two decisions by an Alabama district court to argue that section 8(b)

can not be violated where the title company has provided some services.  *Williams v. Saxon

Mortgage Serv.*, 2007 WL 1845642 (S.D. Ala. June 25, 2007); *Morrisette v. NovaStar Home

Mortgage, Inc.*, 484 F. Supp. 2d. 1227 (S.D. Ala. 2007).  Although the cases were closely

analogous, neither decision focused on the plaintiffs' allegations of fee splitting, but instead

concentrated on whether overcharges by the title insurers, standing alone, could violate

section 8(b).  *Id*. at 1229 (noting that the "plaintiffs' beef is not that [the title insurer]

performed no services but that it was paid too much for those services – i.e., that it

overcharged for the policy"); *Williams*, 2007 WL 1845642, at *4 (noting that "the conduct

for which the [plaintiffs] seek redress from [the title insurer] under RESPA is that [the title

insurer] allegedly accepted too much money for the service of providing a lender title

insurance policy . . .").  As it has explained, *supra* at 5, the Court is in agreement with the

Alabama court's finding that a title insurer's overcharge, standing alone, is not a violation

of 8(b).  It also agrees that an overcharge is not transformed into a violation simply because

ORDER – PAGE 7

it is easy to calculate.  *Id*.  But that analysis says nothing about fee splitting allegations.

Stewart only barely addresses that issue and, when it does, it relies almost wholly on

*Morrisette*, where the court dismissed the relevance of fee splitting allegations in a short

footnote but offered no real analysis. 484 F. Supp. 2d. at 1229 n.2.  Later, in *Williams*, the

court more extensively discussed fee splitting allegations,  2007 WL 1845642, at *3-4, but

Stewart has not shown either that the analysis is applicable or that the Court should follow

it.[6]  Accordingly, the Court has not been convinced to change its reasoning.

## V.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED UNJUST ENRICHMENT

Plaintiffs' allegation that Stewart failed to apply the mandatory discount for its reissue

policy states a claim for unjust enrichment under Texas law.  Unjust enrichment may occur

where "the person sought to be charged [has] wrongfully secured a benefit or [has] passively

received one which it would [be] unconscionable to retain." *RDG Ltd. P'ship v. Gexa Corp.*,

2005 WL 949171, at *4 (Tex. App. – Houston [14th Dist.] April 26, 2005, no pet.) (noting

---

[6]Because it is not clear if the allegations in *Williams* are sufficiently identical to Plaintiffs' allegations, it is also not clear if *Williams*'s holding on fee splitting allegations is contrary to the Court's decision.  The *Williams* court read the complaint to allege that the agent inflated the insurance premium and gave some of the excessive charges to the title insurer, and found that  the plaintiffs had not stated a claim under section 8(b).  *Id*. at *4.  It further noted that it could *not* read the complaint to allege that the title agent had forwarded the entire excess charge to the insurer and that the insurer returned a portion of the payment to the agent, but that such a reading might support a claim under section 8(b).  *Id*. at *4 n.7.  Because the Court presumes that title insurance premiums are properly regarded as being owed to the insurer, and because the Court can find no relevant distinction between (1) an insurer accepting money only to return a portion and (2) accepting only a portion of the money owed to it, the Court finds that Plaintiffs' complaint contains allegations of the latter type.  However understood, the insurer gives, and the agents accept, a portion of the insurer's excess premiums.  Accordingly, the question is whether the giving of the portion can legitimately be characterized as "for services actually performed."

that "several courts of appeals have relied on the 'passively received' language" and concluding that the language is viable).  Plaintiffs allege that they were entitled to the mandatory discount and that Stewart, by failing to give it to them, wrongfully and/or passively received a benefit which would be unconscionable for it to retain.  Plaintiffs also allege that Stewart lacked good faith.  The Court finds these allegations sufficient to state an unjust enrichment claim under Texas law.  *See Patino*,  No. 3:06-CV-1479-B, slip op. at 14.

Stewart argues that unjust enrichment is not a viable claim because a valid, express contract governed the transaction. "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with [an] express agreement." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex., 2000).  Nonetheless, the allegations in this case are consistent with recovery under an equitable theory, because the validity of the agreement has been undermined.  Texas law required Stewart to give Plaintiffs a discount, and Stewart cannot rely on a contract to override that Texas mandate.

## VI. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED MONEY HAD AND RECEIVED

Plaintiffs' allegation that Stewart failed to apply the mandatory discount for its reissue policy states a claim for money had and received under Texas law.  A cause of action for money had and received "arises when a party obtains money which in equity and good conscience belongs to another." *Best Buy Co., Inc. v. Barrera*, 2006 WL 3438521, at *3 (Tex. App. – Corpus Christi 2006, no pet. h.).  The doctrine is not based on wrongdoing on the part of the defendant "but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. V.*

*Smith*, 946 S.W.2d 162, 164 (Tex. App. – El Paso 1997, no writ). Despite Stewart's exclamations otherwise, Plaintiffs do not have to allege that Stewart knew Plaintiffs' old mortgages were insured.[7]

### CONCLUSION

Plaintiffs' allegation that Stewart charged illegally excessive insurance premiums, coupled with their allegation that Stewart split charges with the its title agents, is sufficient to state a claim for violations of RESPA section 8(b), unjust enrichment, and money had and received. Accordingly, the Court denies Stewart's motion to dismiss.

Signed November 6, 2007.

David C. Godbey
United States District Judge

---

[7]Although Stewart dropped the argument in its reply brief, in its initial brief Stewart suggested that Plaintiffs are required to exhaust the administrative remedies provided by Section 2252.052 of the Texas Insurance Code. Plaintiffs have cited language explicitly excluding title insurance from the statute's coverage, and Stewart has not responded. Nor has Stewart made any argument that, if the statute did apply to title insurance, it was intended to invest "sole authority" in an administrative body. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (explaining that exhaustion of remedies is required only where the legislature invested "sole authority" in an administrative body).

ORDER – PAGE 10