IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN MIMS, LUCY MIMS and HELEN COTTON RAGLAND, individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:07-CV-1078-N |
| STEWART TITLE GUARANTY CO., | § § § | |
| Defendant. | § | |

## **ORDER**

This Order addresses Plaintiffs John Mims, Lucy Mims, and Helen Cotton Ragland's motion for class certification [37]. For the following reasons, the Court grants the Plaintiffs' motion.

### I. FACTUAL BACKGROUND

Plaintiffs allege that they are among numerous consumers who refinanced their homes with Defendant Stewart Title Guaranty ("Stewart") and failed to received a mandatory discount on the premiums of their new policy. When making a residential loan, lenders in Texas generally require the buyer to purchase title insurance for the lender's benefit. A lender title policy protects the lender by insuring it against certain defects in title to the property and by protecting its first lien position. Accordingly, when a borrower refinances an existing mortgage with a new loan, the new lender requires a new lender title policy for its benefit, referred to as a reissue or refinance title insurance policy. In Texas, when a

reissue policy is issued within seven years after the closing of the prior mortgage, the borrower is entitled to a discount under the Texas Department of Insurance's ("TDI") Rate Rule R-8 ("R-8") . The discount off the new premium starts at 40% for renewals occurring within 2 years of a prior policy and decreases by 5% for each additional year from the prior policy up to seven years.  In order to qualify for discounted premiums, Rule R-8 requires that the pre-existing mortgage (a) be fully taken up, renewed, extended or satisfied and (b) have been previously insured (with lender's title insurance).  *See* BASIC MANUAL OF RULES, RATES AND FORMS FOR THE WRITING OF TITLE INSURANCE IN THE STATE OF TEXAS § III RATE RULE R-8.  Stewart issues title insurance policies through affiliated and independent agents.  It has issued thousands of title insurance policies through hundreds of agents in the past several years.  While each agent is responsible for issuing the policy, determining whether the R-8 discount applies, and maintaining the files relating to the closing transaction, all agents operate under a standard, written agency agreement which obligates them to follow Stewart's Underwriting Guidelines ("Stewart Guidelines").  The Stewart Guidelines provide that, for purposes of determining R-8 credit, an agent "may assume" that a refinanced mortgage was insured by a prior title policy if (1) it has a GF number, (2) it is returned to a title company, or (3) it is a first-lien in favor of an institutional lender.  While Stewart alleges that the Stewart Guidelines permit, but did not require, its agents to consider (1) - (3) as sufficient proof of prior insurance, Plaintiffs allege that by company policy, the presence of any of these three indicia establishes the presumption of prior insurance for the purpose of the R-8 discount.

Plaintiffs refinanced their loans with Stewart and did not receive the R-8 reissue credit which they claim they were entitled to. They further allege that Stewart, through its agents, consistently fails to provide the reissue insurance discount, and that in a sampling of 112 complete files of Stewart refinance policies, 73 of the borrowers were entitled to but did not receive the discount. Accordingly, Plaintiffs move to appoint themselves as class representatives on behalf of all persons who, within seven years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by Stewart, and did not receive a refinance credit. The asserted class would be limited to all such persons who closed a refinancing within four years of the filing of the complaint. Plaintiffs bring claims for money had and received, unjust enrichment, violations of RESPA Section 8(b), and breach of implied contract.

## II. STANDARDS FOR CLASS CERTIFICATION

Under Federal Rule of Civil Procedure 23, the Court must "determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(C). The Court has wide discretion in determining whether to certify a class; however, that discretion must be exercised within the bounds of Rule 23. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Furthermore, in making this determination, the Court must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). Although the Court does not consider the merits of the plaintiffs' claims in

determining whether to certify the proposed class, the Court must consider the "the nature and range of proof necessary to establish the plaintiffs' substantive allegations" if it is adequately to conduct the rigorous analysis called for under Rule 23. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 2006 WL 2521183, at *4 (D. Ariz. 2006); *see Castano*, 84 F.3d at 741 ("In order to make the findings required to certify a class action under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control the outcome of the litigation.") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978)).

A case may proceed as a class action only if the party moving for certification demonstrates that it has met all four requirements of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). *See Feder v. Electronic Data Sys.*, 429 F.3d 125, 128 (5th Cir. 2005). Under Rule 23(a), the moving party must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). FED. R. CIV. P. 23(A).

In this case, the Plaintiffs rely on Rule 23(b)(3) in support of class certification. Accordingly, in order to certify the class, the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED R. CIV. P. 23(B)(3).

### III. THE PROPOSED CLASS AND ITS PLAINTIFF REPRESENTATIVES MEET RULE 23(A) REQUIREMENTS

While the numerosity of the proposed class for the purposes of Rule 23(a)(2) is undisputed, Stewart challenges certification on the grounds that the named Plaintiffs were ineligible for R-8 credit, thereby rendering them unsuitable as class representatives on standing, typicality, and adequacy grounds. Even were there to be an identifiable group of borrowers who wrongly failed to receive R-8 credit, Stewart argues that these particular Plaintiffs would not be among them, because their home equity loans could not qualify for such credit. Stewart points to the R-8 requirement that the new loan "fully take up, renew, extend or satisfy" an existing mortgage, and curiously reasons that because home equity loans are "stand-alone liens" that do not renew or extend a prior mortgage, and because they are often used to pay off other debts in addition to the mortgage, that they are categorically unqualified for R-8 benefits.

This argument ignores the fact that a home equity loan may nevertheless fully satisfy a prior mortgage, thereby meeting the R-8 requirement, and also appears to contradict references to R-8 credit in home equity loan situations in both Texas Department of Insurance documentation and Stewart Title's own guidelines. *See* Letter from Title Section Manager, TDI, to Commerce Land Title, Inc. (January 21, 1998) (Plaintiffs' Reply Apx. 806); Stewart Title Bulletin TX000049 (Plaintiffs' Reply Apx. 983-84); Stewart Title Guaranty Co. Bulletin TX000043 (Plaintiffs' Reply Apx. 809); Hyman Depo. at 88-89

ORDER – PAGE 5

(Plaintiffs' Reply Apx. 836-37). There is no reason to conclude that home equity loans are to be treated any differently, as a category, for purposes of R-8 credit. Furthermore, it is undisputed that the Mims and Ragland completely paid off, i.e., "satisfied" their prior mortgages with their respective home equity loans, thereby making them potentially eligible for the R-8 discount. Accordingly, the Court finds that the named Plaintiffs bring claims that are "typical" of those alleging failure to receive R-8 credit, thus meeting the Rule 23(a)(3) typicality requirement.

The Court also finds that the Plaintiffs' claims align with the purported class, and that the proposed class counsel will adequately represent the interests of the class, thereby meeting Rule 23(a)(4) adequacy requirement. Furthermore, the Plaintiffs meet the commonality requirement of Rule 23(a)(2). The test for commonality is not demanding, *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001), and all that is required to satisfy it is "one common question of law or fact." *Id.* A common question here is whether the Plaintiffs and the members of the proposed class failed to receive an R-8 discount for which they were eligible, on refinancing transactions underwritten by Stewart. This is enough for the purposes of Rule 23(a)(2).

### IV. CERTIFICATION IS WARRANTED UNDER RULE 23(B)(3) BECAUSE COMMON ISSUES PREDOMINATE OVER INDIVIDUAL ISSUES IN THE POTENTIAL CLASS CLAIMS

Since the Plaintiffs satisfy the threshold requirements of Rule 23(a), the Court examines whether the proposed class meets the more demanding "predominance and superiority" requirements of Rule 23(b)(3). *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004). In evaluating the predominance requirement, the Court

inquires into the substance and structure of the underlying claims without passing judgment on the merits. *Id.* Courts in this Circuit will deny motions for class certification where individualized liability inquiries overwhelm any issues common to the class, as well as where the computation of damages will require separate mini-trials. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006). Certification is also improper if the class is not adequately defined and clearly ascertainable. *See Ladd v. Dairyland County Mut. Ins. Co. of Texas*, 96 F.R.D. 335, 338 (N.D. Tex. 1982). Stewart opposes class certification on all three of these grounds. According to Stewart, Plaintiffs' proposed class is not objective or clearly ascertainable because it is allegedly based on a liability determination and therefore defined in a circular or "fail safe" manner. Furthermore, it argues that individual factual issues predominate on all of Plaintiffs' claims and that determining liability and damages would require an investigation into the circumstances of each transaction, the policies and practices of each Agent, and the conduct of each lender, mortgage broker, and borrower or borrower's representatives. However, the Court finds that the proposed class does not fail for any of the reasons that Stewart puts forth, and that the Plaintiffs meet the predominance and superiority requirements of Rule 23(b)(3).

### A. The Proposed Class is Objectively Defined and Ascertainable

The Plaintiffs' proposed class definition is:

> All persons who, within seven years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by Defendant Stewart Title Guaranty Company, and did not receive a refinance credit.

The class is also limited to borrowers obtaining policies within four years prior to the filing of the lawsuit. The Plaintiffs proposed class is not defined in a fail safe, liability-based manner. The problem with such a "fail safe" definition is that it requires the court to determine the ultimate issue of liability with regard to each potential class member at the outset, thus putting the cart before the horse. In this case, the Plaintiffs' class definition does not involve any elements of liability, but is instead exclusively based on objective criteria: whether a person sought to refinance or replace an existing mortgage within 7 years, whether or not they were charged a premium by Stewart, and whether or not they received a refinance credit.

However, the Court finds that the proposed class definition is too broad, as it would include individuals who were not eligible for the R-8 credit. Accordingly, the Court acts within its discretion to narrow the class definition. The class members are limited to those individuals identified in the proposed class definition above, whose original mortgage also (1) had a GF number, (2) was returned to a title company, or (3) was a first-lien in favor of an institutional lender. This information is available in the file of the reissue policy for each borrower, *see* Rothermel Depo. at 56 (Plaintiffs' Apx. 255), and the new criteria merely incorporates the Plaintiffs' proposal for identifying class members' eligibility for R-8 credit into the definition of the class itself.

The potential class members are readily identifiable from business records that are within Stewart's custody or available to it upon request. Stewart argues that hundreds of agents, affiliated and independent, issue its policies, and that it does not possess the standard

ORDER – PAGE 8

forms that the Plaintiffs seek. For those files not in Stewart's custody, however, contractual obligations as well as Texas Department of Insurance regulations require agents to provide Stewart access to them. *See* Title Insurance Underwriting Agreement 3, ¶ 5D, (Plaintiffs' Reply Apx. 852); BASIC MANUAL, 32 (citing TEX. INS. CODE ANN. § 2704.001) (Vernon 2005)). Accordingly, the class is ascertainable from objective criteria, given a straightforward examination of a series of documents that are readily available.

### *B. Common Issues Predominate with Regard to Liability*

Stewart argues that, even if there were an identifiable class, determining liability and damages would require complex, individualized findings regarding R-8 eligibility in each transaction. Whether an individual borrower is eligible for R-8 credit depends on whether he refinanced within 7 years of an existing mortgage, whether the prior mortgage was fully taken up, renewed, or satisfied, and whether that prior mortgage was insured. According to Plaintiffs, for each borrower, there is a series of standard title documents within each policy file: an HUD-1 settlement statement, title run, title report or title commitment, title policy and policy worksheet for the transaction. *See* Deal Depo. at 66-68 (Plaintiffs' Apx. 391-93). These documents identify existing mortgages on the property, the principal balance of any prior loans and the date they closed, and the names of prior institutional lenders. Plaintiffs contend that under Stewart Guidelines one "may assume" a refinanced mortgage was insured by a title policy if that mortgage (1) had a GF number (2) it was returned to a title company or (3) it was a first lien in favor of an institutional lender, and therefore that all the

information necessary to determine R-8 eligibility for every borrower can be found in these standard forms.

Stewart, on the other hand, argues that eligibility for the R-8 discount depends on facts of the transaction beyond those found in the title documents, because individual agents might have relied on different criteria from those suggested in the Stewart Guidelines to determine whether there was a prior title policy. The Court agrees that the legal requirements for eligibility for the R-8 credit are not identical to the revised requirements for class membership. According to Plaintiffs, establishing the revised prerequisites for class membership is sufficient evidence for the jury to infer entitlement to the R-8 credit; Stewart claims the jury should not draw that inference. Regardless which side is correct as to the answer to that question, the question itself is a common question of fact. Because the question itself is capable of class-wide determination, the dispute over what determines R-8 eligibility does not itself weigh against class certification.

Stewart also hypothesizes that in many instances agents disclosed the availability of the credit to consumers, and argues that establishing liability on Plaintiffs' claims would require inquiry into the individual circumstances of each transaction in order to determine the knowledge and possible disclaimer of the parties. If Stewart means to say that many of the borrowers waived the discount, despite being eligible for it, Stewart presents no evidence of this, and it is hard to believe that consumers would ever opt to pay a higher rate for the same policy. Aside from this kind of unsupported theory of waiver, Stewart presents no argument as to why disclosure is relevant to determining liability for failure to give the R-8

discount. Granting the R-8 credit to all eligible borrowers is mandatory. *See* Hyman Depo. at 93 (Plaintiffs' Apx. 349); John F. Rothermel III, *Fee Attorneys and Ethical Considerations* 1-3, http://www.stewart.com/page/fee-attorneys-and-ethical-considerations (Plaintiffs' Reply Apx. 860-62). Whether the discount was disclosed to the borrower or to the borrower's representatives is therefore irrelevant to the question of liability, and any individualized inquiry into disclosure in a transaction is unnecessary. Common issues of fact thus predominate with regard to Plaintiff's state law claims.

The Court additionally finds that common issues of fact predominate with regard to Plaintiffs' RESPA § 8(b) claim. *See* 12 U.S.C. § 2607(b). Stewart points to this Court's earlier opinion on a motion to dismiss to support its assertion that liability under RESPA would hinge on an individualized inquiry into whether there was a reasonable relationship between the portion of the premium given to the agents and the services actually provided in each closing. The Court indeed stated that a section 8(b) violation does not exist merely because Stewart split part of its allegedly excess premiums, but rather that the ultimate issue is whether those agents' compensation is reasonably related to the value of those goods or services they provided in each transaction. In this case, however, the Plaintiffs argue that, as a matter of fact, neither the title agent nor Stewart provided services in any of the transactions to justify the excess charge. This is the contention on which the Plaintiffs' RESPA § 8(b) claim rests, and such a contention is capable of being tested on a class wide basis without individualized inquiries into the circumstances of each transaction.

### C. Calculating the Potential Damages and Determining the Applicability of Statutes of Limitations to Individual Class Members' Claims Are Both Feasible on a Class Wide Basis

The Court finds that class members' potential damages are calculable by reference to the same standard form documents used to determine R-8 eligibility. The Plaintiffs present a spreadsheet of sample damage calculations for 73 policy files, applying the rate schedules to the information found in the HUD-1 and title commitment or title report. The spreadsheet they offer includes all the information necessary to calculate the R-8 credit for each class member: the new loan amount and premium charged, as well as the prior loan date, original balance, and payoff. The need for individualized inquiry into quantification of damages in case of liability does not, in itself, preclude class certification. *See Owner Operator Indep. Drivers Ass'n, Inc. v. Fee Transp. Services, Inc.*, 245 F.R.D. 253, 256 (N.D. Tex. 2007). In this case, any possible damage calculations would "neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). The prevalence of variables common to the class would make any necessary damage computation "virtually a mechanical task," *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 326-27 (5th Cir. 1978), as the Plaintiffs demonstrate. Accordingly, the court finds that any calculation of the class damages, should that become necessary, would be straightforward.

Similarly, the Court finds that a straightforward examination of the date of closing of each class member's reissue loan would be sufficient to determine which claims are barred with respect to which class members because of the applicable statutes of limitations. Thus, the mere fact that the RESPA and state law claims have different statutes of limitations does

not defeat the possibility of class certification in this case. The relevant statutes of limitation are one year for the RESPA § 8(b) claim and two years for the unjust enrichment and money had and received claims. *See* 12 U.S.C. § 2614 (RESPA); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (unjust enrichment); *Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 342 (Tex. App. – Texarkana 1999, no pet.) (money had and received). The claim for breach of implied contract has a four-year statute of limitations. *See Hallmark v. Hand*, 885 S.W.2d 471 (Tex. App. – El Paso 1994, pet. denied) ("if the allegations rest upon a breach of duty, express or implied . . . the action sounds in contract"); *Julian v. Trustees of the Agreement of Trust for Maritime Ass'n-I.L.A. Pension Plan*, 5 F. Supp. 2d 469, 473 (mentioning a claim for breach of implied contract and immediately noting that "the Texas state of limitations for actions sounding in contract is four years."). Accordingly, the four-year class period is appropriate as it is coextensive with the limitations period on the breach of implied contract claim.

Furthermore, none of the class members' claims are subject to equitable tolling, because the Plaintiffs have not plead anything amounting to "rare and exceptional circumstances" under which courts grant equitable tolling in this Circuit. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). In a case substantially similar to this one, involving RESPA claims arising from the failure to give an R-8 discount, this Court declined to consider tolling,

ORDER – PAGE 13

finding that the Plaintiffs could have discovered that they were not given a mandatory discount by consulting the Texas Title Manual, which is available online. *Hamilton v. First Am. Title Co.*, 2008 WL 382803, at 4* (N.D. Tex. 2008). Though Plaintiffs allege here that borrowers do not receive sufficient information from which to calculate the proper premium and to determine whether they got a discount, the *Hamilton* Plaintiffs alleged the same in their Brief in Opposition to Defendant's Motion to Dismiss. As in *Hamilton*, equitable tolling is not justified in this case on any of the Plaintiffs' claims. Therefore, individualized inquiries into each borrower's knowledge about their eligibility for a discount are irrelevant, and do not present a problem for certification of the class.

Common issues of law and fact predominate with regard to the proposed class and its claims. Any individualized inquiries necessary to calculate damages or to restrict certain class members' claims due to statutes of limitations are straightforward and mechanical. Therefore, the class meets the predominance requirement of Rule 23(b)(3).

Additionally, the potential for recovery on any single claim is small in relation to litigation costs, rendering an individual action very unlikely. Certification of the class will achieve economies of time, effort, and expense. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Since a class action will be an efficient and manageable method of adjudicating the potential plaintiffs' claims, it is the superior method under Rule 23(b)(3).

## CONCLUSION

Because the proposed class, as modified in this Order, meets the threshold requirements of Rule 23(a) as well as the predominance and superiority requirements of Rule

23(b)(3), the Court grants the motion to certify the modified class. The certified class is: All persons who, within seven years of the date of an existing mortgage on their residential real property in Texas, refinanced or otherwise replaced their existing mortgage and were charged a premium for a new lender title insurance policy underwritten by Defendant Stewart Title Guaranty Company, and did not receive a refinance credit, whose original mortgage also (1) had a GF number, (2) was returned to a title company, or (3) was a first-lien in favor of an institutional lender. The class is limited to all such persons who closed a refinancing within four years of the filing of the complaint.

Signed December 11, 2008.

_____
David C. Godbey
United States District Judge